# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### KNOXVILLE DIVISION

| | | |
|---|---|---|
| RUBEN HUSU, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | Case No. 3:11-CV-375 |
| | ) | |
| MILLER ENERGY RESOURCES, INC. f/k/a MILLER PETROLEUM, INC., SCOTT M. BORUFF, and PAUL W. BOYD, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

| | | |
|---|---|---|
| STEVEN ARLOW, Individually and on Behalf of All Other Persons Similarly Situated, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 3:11-CV-386 |
| | ) | |
| MILLER ENERGY RESOURCES, INC. f/k/a MILLER PETROLEUM, INC., SCOTT M. BORUFF, and PAUL W. BOYD, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

| | | |
|---|---|---|
| JAMES D. DiCENSO, Individually and on Behalf of All Others Similarly Situated, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 3:11-CV-387 |
| | ) | |
| MILLER ENERGY RESOURCES, INC., DELOY MILLER, SCOTT M. BORUFF, PAUL W. BOYD, and DAVID J. VOYTICKY, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

(captions continued on next page)

| | |
|---|---|
| BRANDON W. WARD, Individually and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 3:11-CV-391 ) |
| MILLER ENERGY RESOURCES, INC. f/k/a MILLER PETROLEUM, INC., SCOTT M. BORUFF, and PAUL W. BOYD, | ) ) ) ) ) |
| Defendants. | ) ) |
| YINGTAO LIU, Individually and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 3:11-CV-397 ) |
| MILLER ENERGY RESOURCES, INC., SCOTT M. BORUFF, PAUL W. BOYD, DELOY MILLER, DAVID J. VOYTICKY, HERMAN GETTLEFINGER, JONATHAN S. GROSS, DAVID M. HALL, MERRILL A. MCPEAK, CHARLES STIVERS, and DON A. TURKELSON, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

**BRIEF IN SUPPORT OF OKLAHOMA FIREFIGHTERS PENSION
AND RETIREMENT SYSTEM'S MOTION FOR CONSOLIDATION
OF RELATED ACTIONS, FOR ITS APPOINTMENT AS LEAD PLAINTIFF,
AND FOR THE APPROVAL OF ITS SELECTION OF COUNSEL**

PROVOST UMPHREY LAW FIRM, L.L.P.
W. Michael Hamilton, # 10720
2021 Richard Jones Road
Suite 300
Nashville, TN 37215
Tel: (615) 242-0199

*Local Counsel*

GRANT & EISENHOFER P.A.
Jay W. Eisenhofer
Megan D. McIntyre
45 Rockefeller Center, 15th Floor
630 Fifth Avenue
New York, New York 10111
Tel: (646) 722-8500

*Counsel for Movant Oklahoma Firefighters'
Pension and Retirement System*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ....................................................................................................... 2

    A.    Miller Energy ................................................................................................... 2

    B.    Oklahoma Firefighters Pension and Retirement System ........................................... 3

    C.    Miller Energy Fraudulently Overstated The Value Of It Assets And
           Engaged In Accounting Fraud During The Class Period ........................................ 3

    D.    Procedural Background ........................................................................................ 5

ARGUMENT ............................................................................................................................ 6

I.      THE RELATED CASES SHOULD BE CONSOLIDATED ........................................... 6

II.    OKLAHOMA FIREFIGHTERS SHOULD BE APPOINTED LEAD
       PLAINTIFF AND ITS SELECTION OF LEAD COUNSEL SHOULD
       BE APPROVED .......................................................................................................... 7

    A.    The PSLRA Favors Institutional Investors Who Have A Large
           Financial Interest In The Lawsuit .......................................................................... 7

    B.    Oklahoma Firefighters Has The Largest Financial Interest Of The Plaintiffs
           Who Have Come Forward, And Is The Type Of Institutional Investor
           Favored By The PSLRA ..................................................................................... 10

    C.    Oklahoma Firefighters Satisfies The Requirements Of Rule 23 ............................ 11

         1.    Oklahoma Firefighters' Claims Are Typical Of The Class Claims ......... 12

         2.    The Oklahoma Firefighters Will Adequately Represent The
              Interests Of The Class .............................................................................. 13

    D.    The Court Should Approve The Oklahoma Firefighters' Choice Of
           Counsel ........................................................................................................... 14

CONCLUSION ...................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Beattie v. CenturyTel, Inc.*,
    511 F.3d 554 (6th Cir. 2007) ...............................................................12

*Burgraff v. Green Bankshares, Inc.*,
    No. 10-CV-253, 2011 WL 613281 (E.D. Tenn. Feb. 11, 2011) ........................................13, 14

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) .......................................................12, 14

*In re CMS Energy Sec. Litig.*,
    No. 02-CV-72004-DT, 2002 WL 32817518 (E.D. Mich. Nov. 14, 2002) .........................8, 11

*Dolan v. Axis Capital Holdings, Inc.*,
    Nos. 04-8564, 04-8810, 2005 WL 883008 (S.D.N.Y. Apr. 13, 2005) .................................6, 7

*Eichenholtz v. Verifone Holdings, Inc.*,
    No. C 07-06140 MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008)...................................2

*Garden City Employees' Ret. Sys. v. Psychiatric Solutions, Inc.*,
    No. 09-CV-882, 2010 WL 1790763 (M.D. Tenn. Apr. 30, 2010).........................................8

*Hall v. Medicis Pharm.*,
    No. CV-08-1821-PHX-GMS, 2009 WL 648626 (D. Ariz. Mar. 11, 2009).......................7, 12

*Haung v. Acterna Corp.*,
    220 F.R.D. 255 (D. Md. 2004).......................................................8

*In re Oxford Health Plans, Inc., Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998) .......................................................11

*In re Party City Sec. Litig.*,
    189 F.R.D. 91 (D.N.J. 1999)...........................................................9

*In re Regions Morgan Keegan Closed-End Fund Litig.*,
    No. 07-CV-2830, 2010 WL 5173851 (W.D. Tenn. Dec. 15, 2010) ............................... *passim*

*Stacey v. Charles J. Rogers, Inc.*,
    756 F.2d 440 (6th Cir. 1985) .......................................................6

*State Universities Ret. Sys. Of Illinois v. Sonus Networks, Inc.*,
    No. 06-10040-MLW, 2006 WL 3827441 (D. Mass. Dec. 27, 2006).......................................12

ii

*Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*,
  No. 2:06-CV-2674-PHX-RCB, 2007 WL 2692217 (D. Ariz. Sept. 11, 2007).......................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)..........................................................................................................8

*In re Universal Access Inc. Sec. Litig.*,
  209 F.R.D. 379 (E.D. Tex. 2002)...................................................................................11

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
  216 F.R.D. 248 (S.D.N.Y. 2003) ....................................................................................11

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(A)(i)(II)......................................................................................9

15 U.S.C. § 78u-4(a)(3)(B)(i) ...........................................................................................9

15 U.S.C. § 78u-4(a)(3)(B)(ii) ..........................................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(iii).........................................................................9, 10, 11, 14

15 U.S.C. § 78u-4(a)(3)(B)(v) .........................................................................................14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a) ............................................................................................ 11, 12, 13

Fed. R. Civ. P. 42(a) .........................................................................................................6

1 H. Newberg, *Newberg on Class Actions* § 3.13 (3d ed. 1992) ...................................13

Conference Report on Securities Litigation Reform, H.R. Rep. No. 104-369 (1995)................1, 7

S. Rep. No. 104-98 (1995).........................................................................................1, 8

iii

## PRELIMINARY STATEMENT

The Oklahoma Firefighters Pension & Retirement System ("Oklahoma Firefighters") hereby moves to consolidate various related securities fraud class actions[1] filed against Miller Energy Resources, Inc. ("Miller Energy" or the "Company") and other defendants, and to be appointed as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by Section 101(a) of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Oklahoma Firefighters further moves for approval of its selection of the law firm of Grant & Eisenhofer P.A. as Lead Counsel.

The relief sought herein is precisely what the framers of the PSLRA hoped to accomplish, *i.e.*, the appointment of institutional investors to serve as Lead Plaintiffs in class actions arising under the federal securities laws. As Congress noted in the Statement of Managers, the PSLRA was intended "to increase the likelihood that institutional investors will serve as lead plaintiffs" because, among other reasons, institutional investors and other class members with large amounts at stake "will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." Conference Report on Securities Litigation Reform, H.R. Rep. No. 104-369, at *28-29 (1995) (Conf. Rep), 1995 WL 709276; S. Rep. No. 104-98, at *11 (1995) (Conf. Rep), 1995 WL 372783.

---

[1] The related securities fraud class actions filed in the Eastern District of Tennessee include: *Husu v. Miller Energy Resources, Inc., et al.*, No. 3:11-CV-375 (filed August 12, 2011), *Arlow v.Miller Energy Resources Inc., et al.*, No. 3:11-CV-386 (filed August 16, 2011), *DiCenso v. Miller Energy Resources, Inc., et al.*, No. 3:11-CV-387 (filed August 16, 2011), *Ward v. Miller Energy Resources, Inc., et al.*, No. 3:11-CV-391 (filed August 19, 2011), and *Liu v. Miller Energy Resources, Inc., et al.*, No. 3:11-CV-397 (filed August 22, 2011), as well as any other federal securities class actions based upon substantially similar facts as alleged in the above-listed actions (hereinafter "Related Actions").

Oklahoma Firefighters is exactly the type of institutional investor envisioned by Congress as the most adequate Lead Plaintiff in a securities class action such as this one. During the period from December 6, 2009 to August 8, 2011 (the "Class Period"),[2] Oklahoma Firefighters purchased a total of 64,330 shares of common stock of Miller Energy – all of which it held through the end of the Class Period[3] – and suffered losses of approximately $179,129 on those shares. In addition to having a significant stake in the outcome of this litigation, Oklahoma Firefighters fully satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and is more than capable of adequately representing the interests of class members. Finally, Oklahoma Firefighters has timely filed this motion in accordance with the PSLRA's statutory requirements and has the expertise, resources and sophistication necessary to be fully involved in this litigation and to obtain the maximum possible compensation for all class members. Accordingly, Oklahoma Firefighters should be appointed as Lead Plaintiff.

## STATEMENT OF FACTS

### A.  Miller Energy

Miller Energy is a Tennessee corporation with its principal place of business in Huntsville, Tennessee and satellite offices in Knoxville, Tennessee and Anchorage, Alaska. The Company is engaged in the exploration, drilling and production of oil and natural gas resources in the United States, with its primary focus in the Cook Inlet area of Alaska and in Tennessee's

---

[2]     This period is taken from the class action complaint filed on August 16, 2011 titled *Arlow v. Miller Energy Resources, Inc., et al.*, No. 3:11-CV-386. This is the broadest of the class periods alleged in the various Related Actions. *See Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 WL 3925289, at *2 (N.D. Cal. Aug. 22, 2008) (finding that for purposes of appointing lead plaintiff, it was appropriate to utilize the longest potential class period).

[3]     *See* Certification of Oklahoma Firefighters Pension and Retirement System dated October 11, 2011 (the "Certification"), attached as Exhibit A to the Declaration of Megan D. McIntyre ("McIntyre Decl."), submitted herewith.

2

Appalachian Basin. The Company's common stock is listed on the New York Stock Exchange under the symbol MILL.

### B. Oklahoma Firefighters

Oklahoma Firefighters Pension and Retirement System ("Oklahoma Firefighters") is an agency of the State of Oklahoma, providing pension and retirement benefits to more than 21,000 participating members, including both active and retired firefighters and their beneficiaries. *See* Certification ¶ 1. During the Class Period, Oklahoma Firefighters spent a total of $362,071 to purchase 64,330 shares of Miller Energy common stock, and sold none. *See* Attachment to Certification. By the end of the Class Period, Oklahoma Firefighters had lost $179,129 on its 64,330 shares of Miller Energy common stock, as a result of the stock price decline caused by the fraudulent conduct described below.[4]

### C. Miller Energy Fraudulently Overstated The Value Of It Assets And Engaged In Accounting Fraud During The Class Period

On December 16, 2009, the Company issued a press release titled, "Tennessee firm acquires more than $300 million in Alaskan oil and gas assets," in which it announced its acquisition of the Alaskan oil and gas assets of Pacific Energy Resources (the "Alaskan Assets"), purportedly valued in excess of $300 million, for approximately $4.47 million. On March 15, 2010, the Company issued a press release in which it valued the Alaskan Assets at over $492 million on a pro forma basis. Throughout the period that followed leading up to July 28, 2011,

---

[4] These loss calculations are based upon the Class Period transaction data set forth in the attachment to the Certification. Oklahoma Firefighters owned no Miller Energy shares at the beginning of the Class Period. For purposes of Oklahoma Firefighters' loss calculations, Miller Energy's average closing share price from August 9, 2011 to October 10, 2011 – $2.92 – was used as the price for the shares still held.

3

the Company issued a series of press releases and filed documents with the Securities & Exchange Commission ("SEC") that touted the high value of the Alaskan Assets.

On July 28, 2011, a report entitled "Miller Energy: This Hot 'Alaska' Stock May Be About to Melt," was published on the internet (the "Report"). The Report indicates that other well-known and respected industry experts had expressed doubt about the values Miller Energy attributed to the Alaskan Assets, including another energy company that had explored the possibility of acquiring the Alaskan Assets, but declined when it determined that the Alaskan Assets were worth no more than $30 million, and came with approximately $40 million in liabilities, a far cry from the more than $300 million valuation attributed by Miller Energy at the time of the purchase. The Report further noted that Miller Energy had hired KPMG LLP ("KPMG") almost six months earlier to verify the Company's valuation of the Alaskan Assets, but that no such verification had yet been made public.

On July 29, 2011, Miller Energy filed its Form 10-K for the 2011 fiscal year ended April 30, 2011, and reported that the Audit Committee of the Board of Directors had determined that the Company's unaudited consolidated balance sheets for periods ending July 31, 2010, October 31, 2010 and January 31, 2011 should no longer be relied upon due to, *inter alia*, failure to classify royalty expenses; failure to record depletion, depreciation and amortization expenses related to wells and equipment and fixed assets; and failure to properly record income taxes. The Form 10-K stated that KPMG had not issued a report on the Company's internal control over financial reporting, but the Form 10-K ***did*** contain an audit opinion from KPMG LLP ("KPMG") with respect to the Company's financial statements for the period ended April 30, 2011.

On August 1, 2011, the Company filed a Form 8-K stating that the Company's financial statements for the period ended April 30, 2011 – which had been filed in a Form 10-K only three

4

days earlier – should also not be relied upon, and that the errors resulted from "a material weakness" of "internal control over financial reporting." The Form 8-K explained that the Form 10-K had been filed prior to KPMG LLP completing its review of the Company's annual financial statements, and without KPMG's consent to the inclusion of its audit opinion in the Form 10-K.

On August 9, 2011, Miller filed an amended Form 10-K for the year ended April 30, 2011, which corrects some errors concerning cash flows and enhances disclosures concerning executive compensation and weaknesses in disclosure controls and procedures. However, KPMG had still not completed its audit, and the Company's financial statements were therefore labeled as unaudited.

After trading in excess of $7.00 per share prior to July 28, 2011, these negative revelations about the Company caused Miller Energy's stock price to drop below $4.00 per share by August 1, 2011, and below $3.00 per share by August 8, 2011. The Company's stock price currently continues to trade below $3.00, and thus the Company's market capitalization has fallen by more than $163 million since July 27, 2011, representing a 57% decline in value.

D.     **Procedural Background**

On August 12, 2011, the first of the Related Actions was filed in this District. The complaints in all of the Related Actions assert claims pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 against Miller Energy and certain of its senior executives, alleging that the defendants' public statements during the Class Period[5] were false and misleading because, *inter alia*, they materially overstated the value of the Alaskan Assets, they

---

[5]     The complaints in the Related Actions assert a variety of different starting and ending dates for the class period, but the all involve the same alleged wrongdoing.

were tainted by accounting fraud, and they failed to disclose that the Company lacked adequate internal and financial controls.

After the first Related Action was filed, notice of the lawsuit was published on *Business Wire* on August 12, 2011, informing investors of the filing of the action and of the deadline to seek appointment as Lead Plaintiff. *See* McIntyre Decl. Ex. B.

## ARGUMENT

## I.     THE RELATED ACTIONS SHOULD BE CONSOLIDATED

The PSLRA provides, among other things, for the consolidation of related actions brought under the federal securities laws. Section 21D(a)(3)(B)(ii) of the Exchange Act provides:

> If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the determination [of appointment of lead plaintiff under § 21D(a)(3)(B)(i)] until after the decision on the motion to consolidate is rendered.

15 U.S.C. § 78u-4(a)(3)(B)(ii). Thus, under the PSLRA, the Court should first rule on consolidation, and should then determine the lead plaintiff and lead counsel.

Under Fed. R. Civ. P. 42(a), a court may order all actions consolidated if they "involve a common question of law or fact." In determining the propriety of consolidation, courts primarily consider whether judicial economy would be served. *See, e.g, Stacey v. Charles J. Rogers, Inc.*, 756 F.2d 440, 442 (6th Cir. 1985) (noting that "[c]onsolidation is permitted as a matter of convenience and economy in administration"); *Dolan v. Axis Capital Holdings, Inc.*, Nos. 04-8564, 04-8810, 2005 WL 883008, at *1 (S.D.N.Y. Apr. 13, 2005) (noting that in deciding whether to consolidate, "district courts have 'broad discretion' although they generally espouse the view that 'considerations of judicial economy favor consolidation'") (quoting *Ferrari v.*

6

*Impath, Inc.*, No. 03-5667, 2004 WL 1637053, at *2 (S.D.N.Y. July 20, 2004)). In the context of securities class actions, "consolidation is particularly appropriate . . . if the complaints are based on the same public statements and reports and defendants will not be prejudiced." *Dolan*, 2005 WL 8830008, at *1 (internal quotations omitted). *See also Hall v. Medicis Pharm.*, No. CV-08-1821-PHX-GMS, 2009 WL 648626, at *1 (D. Ariz. Mar. 11, 2009) ("[C]onsolidation is often warranted where multiple securities fraud class actions 'are based on the same public statements and reports.'").

Here, each of the Related Actions involves common issues of law and fact as each asserts that their respective class members purchased Miller Energy securities in reliance on the same statements and omissions by the defendants, which were rendered materially false and misleading because of the defendants' fraudulent conduct described above. These lawsuits name common defendants and assert the same causes of action under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. In addition, the Related Actions will undoubtedly involve overlapping discovery of parties and non-parties. Accordingly, consolidation of the Related Actions is appropriate to foster judicial economy and efficiency.

## II. OKLAHOMA FIREFIGHTERS SHOULD BE APPOINTED LEAD PLAINTIFF AND ITS SELECTION OF LEAD COUNSEL SHOULD BE APPROVED

### A. The PSLRA Favors Institutional Investors Who Have A Large Financial Interest In The Lawsuit

The PSLRA's lead plaintiff provisions were enacted to rectify many of the perceived evils in private shareholder class actions, the most notorious being that such cases had become "lawyer driven" by a handful of plaintiffs' attorneys across the country who often placed their economic interests above the interests of their clients, the shareholders. *See* Conference Report on Securities Litigation Reform, H.R. Rep. No. 104-369 (1995), *reprinted in* 1996 U.S.C.C.A.N.

730, 731-34; S. Rep. No. 104-98 (1995), *reprinted in* 1996 U.S.C.C.A.N. 679, 687-90. The legislative history of the PSLRA reflects Congress's desire to redress this problem by "requir[ing] that the plaintiff with the largest stake in the outcome of the case serve as lead plaintiff," thereby "increas[ing] the likelihood that institutional investors will serve as lead plaintiffs"). *Id.*; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007) (recognizing that the PSLRA was "aimed to increase the likelihood that institutional investors … would serve as lead plaintiffs"); *In re Regions Morgan Keegan Closed-End Fund Litig.*, No. 07-CV-2830, 2010 WL 5173851, at *6 (W.D. Tenn. Dec. 15, 2010) ("One of the main purposes Congress sought to advance when enacting the PSLRA was to promote the appointment of institutional investors as lead plaintiffs.").

In expressing this preference for the appointment of institutional investors as lead plaintiffs when possible, Congress recognized that institutional investors typically not only have large economic stakes in the case, but are also accustomed to acting in a fiduciary capacity and will be motivated to ensure that litigation decisions are made in the best interests of the class. *See Garden City Employees' Ret. Sys. v. Psychiatric Solutions, Inc.*, No. 09-CV-882, 2010 WL 1790763, at *3 (M.D. Tenn. Apr. 30, 2010) ("[T]he PSLRA's legislative history reflects a Congressional intention to favor institutional investors that have the greater financial resources and experience to satisfy their fiduciary duties to the class members."); *Haung v. Acterna Corp.*, 220 F.R.D. 255, 258 (D. Md. 2004) ("As Congress and academics have noted, institutional investors have incentives to monitor their suits closely because of their substantial stakes in the stock at issue, thereby eliminating frivolous tactics and settlements that inflate attorneys' fees."); *In re CMS Energy Sec. Litig.*, No. 02-CV-72004-DT, 2002 WL 32817518, at *3 n.1 (E.D. Mich. Nov. 14, 2002) (noting as persuasive the argument "that the PSLRA reflected Congress' desire to

8

'increase the likelihood that institutional investors will serve as lead plaintiffs' because institutional investors, 'with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake'"); *In re Party City Sec. Litig.*, 189 F.R.D. 91, 104 (D.N.J. 1999) (the PSLRA "ensure[s] that institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation, not lawyers").

Under the PSLRA, any member of the purported class may move for appointment as lead plaintiff within 60 days of the publication of notice that the action has been filed. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Subsequently, the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i). Consistent with its legislative history, the PSLRA provides that the court shall make a significant presumption when determining the "most capable" plaintiff:

> [T]he court **shall adopt a presumption that the most adequate plaintiff** in any private action arising under this title is the person or group of persons that –
>
>> (aa)  has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>>
>> (bb) in the determination of the court, **has the largest financial interest in the relief sought by the class**; and
>>
>> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii) (emphasis added)

Thus, the PSLRA requires that, in determining which class member to appoint as lead plaintiff, the Court must follow a sequential process whereby it first "identif[ies] the applicant with the largest financial interest in the litigation," and then "analyzes *that party alone* to see if it complies with the requirements of Rule 23." *In re Regions*, 2010 WL 5173851, at *3 (emphasis

9

in original; citations omitted). If the movant with the largest financial interest satisfies the Rule 23 requirements, it is presumed to be the "most adequate" plaintiff – a presumption that can be rebutted "only upon *proof* by a member of the purported plaintiff class that the presumptively most adequate plaintiff … will not fairly and adequately protect the interests of the class; or … is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added).

As set forth below, Oklahoma Firefighters is exactly the type of lead plaintiff envisioned by Congress in enacting the PSLRA, and it satisfies all of the criteria contemplated by the PSLRA for determining the most adequate lead plaintiff. As such, Oklahoma Firefighters should be appointed as Lead Plaintiff in this action.

**B.     Oklahoma Firefighters Has The Largest Financial Interest Of The Plaintiffs Who Have Come Forward, And Is The Type Of Institutional Investor Favored By The PSLRA**

Oklahoma Firefighters has a greater financial interest in this lawsuit than any of the class members who filed complaints in the Related Actions, by virtue of its $179,129 loss on the 64,330 Miller Energy shares it purchased during the Class Period for $362,071.[6] Moreover, as a public pension fund with over 21,000 participants and assets of over $1 billion, Oklahoma Firefighters is the type of sophisticated institutional investor that Congress envisioned serving as a lead plaintiff.

---

[6]     The plaintiffs who filed the Related Actions have not provided any loss figures, but their certifications show that they purchased significantly fewer shares than Oklahoma Firefighters, ranging from 134 shares to 40,300 shares. The plaintiff who purchased 40,300 shares – Steven Arlow – also sold a substantial number of those shares during the Class Period. Oklahoma Firefighters, by contrast, held all of its 64,330 shares through the end of the Class Period.

10

### C.    <u>Oklahoma Firefighters Satisfies The Requirements Of Rule 23</u>

Section 21D(a)(3)(B)(iii)(cc) of the Exchange Act further provides that the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(cc). Rule 23(a) provides that a party may serve as a class representative so long as the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and, (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites of class certification under Rule 23(a), only two – typicality and adequacy of representation – must be considered when appointing a lead plaintiff under the PSLRA, because only those two criteria address the characteristics of the lead plaintiff. *See In re Regions*, 2010 WL 5173851, at *5; *CMS Energy,* 2002 WL 32817518, at *3 (addressing whether institutional investor satisfied the adequacy and typicality requirements of Fed. R. Civ. P. 23); *In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998). The remaining requirements of Rule 23 relate to the adequacy of the claims themselves and should not enter into the Court's analysis in its determination of lead plaintiff. Rather, the Court should defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*, No. 2:06-CV-2674-PHX-RCB, 2007 WL 2692217, at *5 (D. Ariz. Sept. 11, 2007); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003); *In re Universal Access Inc. Sec. Litig.*, 209 F.R.D. 379, 385 (E.D. Tex. 2002).

Additionally, when evaluating the typicality and adequacy of a lead plaintiff movant, "[t]he initial inquiry (i.e., the determination of whether the movant with the largest interest in the

case 'otherwise satisfies' Rule 23) should be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy." *State Universities Ret. Sys. Of Illinois v. Sonus Networks, Inc.*, No. 06-10040-MLW, 2006 WL 3827441, at *2 (D. Mass. Dec. 27, 2006) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 263-64 (3d Cir. 2001)); *In re Regions*, 2010 WL 5173851, at *5 ("the initial inquiry into typicality and adequacy required to trigger the presumption is only a *prima facie* one"); *Hall*, 2009 WL 648626 at *2 ("[A]ll that is required is a preliminary showing that the lead plaintiff's claims are typical and adequate.") (internal citations omitted). In other words, "the threshold determination of whether the movant with the largest financial losses satisfies the typicality and adequacy requirements should be a product of the court's independent judgment, and … arguments by members of the purported plaintiff class as to why it does not should be considered only in the context of assessing whether the presumption has been rebutted." *Sonus Networks, Inc.*, 2006 WL 3827441, at *2; *see also In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) ("When the district court makes its initial determination [regarding a plaintiff's adequacy and typicality], it must rely on the presumptive lead plaintiff's complaint and sworn certification; there is no adversary process to test the substance of those claims.") (citing *In re Cendant Corp. Litig.*, 264 F.3d at 264).

As discussed below, Oklahoma Firefighters satisfies both the adequacy and typicality requirements of Rule 23(a).

### 1. Oklahoma Firefighters' Claims Are Typical Of The Class Claims

Rule 23(a)(3) of the Federal Rules of Civil Procedure requires that "the claims . . . of the representative parties" be "typical of the claims . . . of the class." A putative lead plaintiff's claims are typical of the class's claims if they "arise[] from the same event or practice or course that gives rise to the claims of other class members, and . . . are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (citing *In re Am. Med. Sys., Inc.*,

12

75 F.3d 1069, 1082 (6th Cir.1996)). *See also* 1 H. Newberg, *Newberg on Class Actions* § 3.13 (3d ed. 1992) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met regardless of minor variations in fact patterns underlying individual claims").

Here, Oklahoma Firefighters suffered losses as a result of the same course of conduct, and possesses the same legal claims, as the other class members. As public stockholders of Miller Energy, Oklahoma Firefighters and all other members of the class are innocent victims of the defendants' fraudulent conduct. Oklahoma Firefighters' losses, like the losses suffered by the other class members, arise from the artificial inflation of Miller Energy's stock price caused by the defendants' misrepresentations of the Company's financial condition. Oklahoma Firefighters is not subject to any unique or special defenses. Thus, its claims are in all respects "typical" of the claims of the class. *See Burgraff v. Green Bankshares, Inc.*, No. 10-CV-253, 2011 WL 613281, at *3 (E.D. Tenn. Feb. 11, 2011) (typicality requirement satisfied where lead plaintiff movant purchased securities at prices artificially inflated by the same misrepresentations and omissions as the other class members); *In re Regions*, 2010 WL 5173851, at *5 (same).

### 2. Oklahoma Firefighters Will Adequately Represent The Interests Of The Class

The purpose of Rule 23(a)(4)'s adequacy requirement is "to ensure there are no conflicts of interest between the purported lead plaintiff and the other class members." *Burgraff*, 2011 WL 613281, at *3. This requirement is satisfied where the lead plaintiff does not have any interests adverse to those of the class, and "has both the ability and the incentive to represent the class's claims aggressively." *Id.*; *In re Regions*, 2010 WL 5173851, at *5.

Oklahoma Firefighters easily meets the adequacy requirements. First, its interests are the same as those of the other class members, *i.e.*, to hold the defendants liable for the consequences

13

of their violations of the federal securities laws and for the damages caused to investors who purchased Miller Energy securities at artificially inflated prices. There are no facts which indicate any conflict of interest between Oklahoma Firefighters and the other class members. Second, as an institutional investor with a significant financial interest in this case and experience serving as a lead plaintiff in other federal securities class actions,[7] Oklahoma Firefighters has both the ability and the incentive to fulfill the statutory role of Lead Plaintiff. *See In re Regions*, 2010 WL 5173851, at *6 (presence of institutional investor supported finding of adequacy). Finally, as explained below, Oklahoma Firefighters has chosen Grant & Eisenhofer P.A., a well-qualified firm, to serve as Lead Counsel – a fact which further demonstrates Oklahoma Firefighters' adequacy. *Burgraff*, 2011 WL 613281, at *3 ("the movant has not only filed a motion to be appointed lead counsel, but he has also hired experienced counsel, which indicates his willingness to fairly and competently represent the interests of the class") (citing *In re Cendant Corp. Litig.*, 264 F.3d at 264).

     **D.**     **The Court Should Approve Oklahoma Firefighters' Choice Of Counsel**

Pursuant to § 21D(a)(3)(B)(v) of the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(v), Oklahoma Firefighters has selected and retained counsel to represent the proposed class, subject to the Court's approval. This Court should not disturb the Lead Plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). *See also In re Cavanaugh,* 306 F.3d at 734 ("Selecting a lawyer in whom a litigant has confidence is an important client prerogative and we will not lightly infer that Congress meant to take away this prerogative from securities plaintiffs. And, indeed, it did not. While the appointment of counsel

---

[7] *See* Certification ¶ 7.

is made subject to the approval of the court, the [PSLRA] clearly leaves the choice of class counsel in the hands of the lead plaintiff.").

Oklahoma Firefighters' choice of counsel, the law firm of Grant & Eisenhofer P.A. ("G&E"), is among the preeminent securities class action law firms in the country, having been sole or co-lead counsel in some of the largest securities class actions in history, and in the case with the largest recovery in the long history of the Delaware Court of Chancery. *Se*e Grant & Eisenhofer biography (McIntyre Decl. Ex. C). G&E has achieved national recognition for its representation of institutional investors, particularly public pension funds, in federal securities fraud and related litigation. The firm has recovered nearly thirteen billion dollars for shareholders in the last five years, including a $3.2 billion class action settlement in *In re Tyco International Limited Securities Litigation*, MDL No. 02-1335-B (D.N.H.), and recoveries in excess of $400 million in securities class actions involving Refco Inc., Global Crossing Ltd. and Marsh & McLennan. G&E also has experience taking securities class actions to trial, having served as sole lead counsel in *In re Safety-Kleen Bondholders Litigation*, No. 00-CV-1145-17 (D.S.C.), which went to a jury trial and ended in judgments as a matter of law against two of the company's executives for nearly $200 million, and settlements with the remaining defendants shortly before closing arguments. *See id.*

Accordingly, the Court should approve Oklahoma Firefighters' selection of Grant & Eisenhofer P.A. as Lead Counsel for the Class.

## CONCLUSION

In light of the foregoing, Oklahoma Firefighters Pension and Retirement System respectfully requests that the Court: (i) consolidate the above-captioned cases; (ii) appoint it to serve as Lead Plaintiff in this consolidated action; and (iii) approve its selection of Grant & Eisenhofer P.A. as Lead Counsel for the Class.


Dated: October 11, 2011                                    Respectfully submitted,


                                                    */s/ Michael Hamilton*
                                                    Michael Hamilton, # 10720
                                                    PROVOST UMPHREY LAW FIRM, L.L.P.
                                                    2021 Richard Jones Road
                                                    Suite 300
                                                    Nashville, TN 37215
                                                    Telephone:  (615) 242-0199
                                                    Email:  MHamilton@provostumphrey.com
                                                    *Local Counsel*

                                                    Jay W. Eisenhofer
                                                    Megan D. McIntyre
                                                    GRANT & EISENHOFER P.A.
                                                    1201 N. Market St.
                                                    Wilmington, DE 19801
                                                    Telephone:  (302) 622-7000
                                                    *Counsel for Movant Oklahoma Firefighters'*
                                                    *Pension and Retirement System*

16