UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| RUBEN HUSU, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>MILLER ENERGY RESOURCES, INC., f/k/a MILLER PETROLEUM, INC., SCOTT M. BORUFF, and PAUL W. BOYD,<br><br>　　　　　　　　　Defendants. | Case No. 3:11-cv-375<br>(VARLAN/SHIRLEY)<br><br><br>JURY DEMAND |

*(Additional captions on following page)*


**MEMORANDUM OF LAW IN SUPPORT OF THE
MOTION OF ELECTRICAL WORKERS PENSION FUND,
LOCAL 103, I.B.E.W. FOR CONSOLIDATION, APPOINTMENT
AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

| | |
|---|---|
| STEVEN ARLOW, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br> v.<br><br>MILLER ENERGY RESOURCES, INC., f/k/a MILLER PETROLEUM, INC., SCOTT M. BORUFF, and PAUL W. BOYD,<br><br>    Defendants. | Case No. 3:11-cv-386<br>(VARLAN/SHIRLEY)<br><br>JURY DEMAND |
| JAMES D. DiCENSO, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br> v.<br><br>MILLER ENERGY RESOURCES, INC., DELOY MILLER, SCOTT M. BORUFF, PAUL W. BOYD and DAVID J. VOYTICKY,<br><br>    Defendants. | Case No. 3:11-cv-387<br>(VARLAN/SHIRLEY)<br><br>JURY DEMAND |
| BRANDON W. WARD, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br> v.<br><br>MILLER ENERGY RESOURCES, INC., f/k/a MILLER PETROLEUM, INC., SCOTT M. BORUFF, and PAUL W. BOYD,<br><br>    Defendants. | Case No. 3:11-cv-391<br>(VARLAN/SHIRLEY)<br><br>JURY DEMAND |
| YINGTAO LIU, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br> v.<br><br>MILLER ENERGY RESOURCES, INC., SCOTT M. BORUFF, PAUL W. BOYD, DELOY MILLER, DAVID J. VOYTICKY, HERMAN GETTELFINGER, JONATHAN S. GROSS, DAVID M. HALL, MERRILL A. MCPEAK, CHARLES STIVERS, and DON A. TURKLESON,<br><br>    Defendants. | Case No. 3:11-cv-397<br>(VARLAN/SHIRLEY)<br><br>JURY DEMAND |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ................................................................................................ 2

ARGUMENT ......................................................................................................................... 5

I.     THE RELATED ACTIONS SHOULD BE CONSOLIDATED ..................................... 5

II.    LOCAL 103 SHOULD BE APPOINTED LEAD PLAINTIFF ...................................... 6

       A.     The PSLRA Standard for Appointing Lead Plaintiff .............................................. 6

       B.     Local 103 Is the "Most Adequate Plaintiff" .......................................................... 7

              1.     Local 103 Has Satisfied the
                    PSLRA's Procedural Requirements ............................................................. 8

              2.     Local 103 Has the Largest Financial
                    Interest in the Relief Sought by the Class .................................................... 8

              3.     Local 103 Satisfies Rule 23's
                    Typicality and Adequacy Requirements ...................................................... 9

                    (a)     Local 103's Claims Are Typical of Those of the Class .................. 9

                    (b)     Local 103 Will Fairly and Adequately
                           Represent the Interests of the Class ............................................. 10

III.   LOCAL 103 IS PRECISELY THE TYPE OF
       LEAD PLAINTIFF ENVISIONED BY THE PSLRA ................................................... 11

IV.   THE COURT SHOULD APPROVE LOCAL 103'S CHOICE OF COUNSEL ............. 12

CONCLUSION ..................................................................................................................... 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Am. Serv. Group, Inc.*,
　No. 06-cv-323-WJH, 2006 WL 2503648 (M.D. Tenn. Aug. 29, 2006) ............................. 11-12

*Burgraff v. Green Bankshares, Inc.*,
　No. 10-cv-253-CLC, 2011 WL 613281 (E.D. Tenn. Feb. 11, 2011) ................................... 8-10

*In re Cavanaugh*,
　306 F.3d 726 (9th Cir. 2002) ................................................................................................. 7

*In re Cendant Corp. Litig.*,
　264 F.3d 201 (3d Cir. 2001) ........................................................................................ 9, 11-12

*Craft v. Vanderbilt Univ.*,
　174 F.R.D. 396 (M.D. Tenn. 1996) ................................................................................. 9-10

*Garden City Employees' Ret. Sys. v. Psychiatric Solutions, Inc.*,
　No. 09-cv-882-WJH, 2010 WL 1790763 (M.D. Tenn. Apr. 30, 2010) ............................... 5-6

*Johnson v. Celotex Corp.*,
　899 F.2d 1281 (2d Cir. 1990) ................................................................................................ 6

*Ohio Pub. Employees Ret. Sys v. Fannie Mae*,
　357 F. Supp. 2d 1027 (S.D. Ohio 2005) ......................................................................... 10-11

*In re Regions Morgan Keegan Closed-End Fund Litig.*,
　No. 07-cv-2830-EPW, 2010 WL 5173851 (W.D. Tenn. Dec. 15, 2010) ........................... 9-11

## DOCKETED CASES

*In re Am. Int'l Group, Inc. Sec. Litig.*,
　No. 04-cv-8141 (S.D.N.Y.) ................................................................................................. 12

*In re Broadcom Corp. Class Action Litig.*,
　No. 06-cv-5036 (C.D. Cal.) ................................................................................................ 12

*In re Countrywide Fin. Corp. Sec. Litig.*,
　No. 07-cv-5295 (C.D. Cal.) ................................................................................................ 12

*In re HealthSouth Corp. Sec. Litig.*,
　No. 03-cv-1501 (N.D. Ala.) ................................................................................................ 13

*In re Monster Worldwide, Inc. Sec. Litig.*,
　　No. 07-cv-2237, Hr'g Tr. (S.D.N.Y. June 14, 2007) ................................................... 13

*In re Nortel Network Corp. ERISA Litig.*,
　　No. 03-md-1537-JTN (M.D. Tenn.) ............................................................................ 13

## FEDERAL STATUTES

15 U.S.C. § 78j(b) ............................................................................................................................ 3

15 U.S.C. § 78t(a) ............................................................................................................................ 3

15 U.S.C. § 78u-(4) *et seq.* ..................................................................................................... *passim*

17 C.F.R. § 240.10b-5 ..................................................................................................................... 3

Fed. R. Civ. P. 23(a) *et seq.* ...................................................................................................... 9-10

## MISCELLANEOUS

S. Rep. No. 104-98 (1995),
　　*reprinted in* 1995 U.S.C.C.A.N. 679 ........................................................................... 11

Electrical Workers Pension Fund, Local 103, I.B.E.W. ("Local 103") respectfully submits this Memorandum of Law in support of its Motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an order: (1) consolidating the above-captioned related actions (the "Action"); (2) appointing Local 103 as Lead Plaintiff for a class of purchasers (the "Class") of Miller Energy Resources, Inc. ("Miller" or the "Company") securities between December 16, 2009 and August 8, 2011, inclusive (the "Class Period");[1] and (3) approving Local 103's selection of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel for the Class and Branstetter, Stranch & Jennings, PLLC ("Branstetter Stranch") as Liaison Counsel for the Class.

## PRELIMINARY STATEMENT

Local 103—an institutional investor with approximately $1 billion in assets under management—respectfully submits that it should be appointed Lead Plaintiff on behalf of purchasers of Miller securities during the Class Period who incurred damages as a result of the Defendants' alleged violations of the Exchange Act. As set forth in detail below, Local 103 retained all of the shares of Miller common stock that it purchased during the Class Period at the close of the Class Period and suffered losses of $73,654, as calculated under the last-in-first-out ("LIFO") loss calculation methodology.[2] Accordingly, Local 103 has a substantial financial

---

[1] The complaints filed against Miller assert different class periods. After it is appointed, the Lead Plaintiff will reconcile the different class periods upon filing a consolidated complaint. For purposes of this Motion, Local 103 adopts the longest class period alleged in these actions.

[2] A copy of the PSLRA-required Certification submitted by Local 103 is attached as Exhibit A to the Declaration of J. Gerard Stranch, IV (the "Stranch Declaration"), submitted herewith. This Certification sets forth all transactions of Local 103 in Miller common stock during the Class Period. In addition, a chart reflecting the calculation of Local 103's financial losses on Miller common stock purchased during the Class Period is attached as Exhibit B to the Stranch Declaration.

interest in the relief sought by this litigation—an interest believed to be greater than that of any competing movant.

Local 103 also meets the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") because its claims are typical of those of absent Class members, and it will fairly and adequately represent the interests of the Class. Indeed, the PSLRA's legislative history shows that Local 103 is precisely the type of sophisticated institutional investor whose participation in securities class actions the PSLRA was meant to foster. In short, Local 103 is the "most adequate plaintiff" and should be appointed Lead Plaintiff.

Local 103 respectfully requests that the Court approve its choice of counsel. Local 103's choice for Lead Counsel, Labaton Sucharow, is a nationally-recognized securities class action firm that has recovered billions of dollars in damages for injured shareholders. Local 103's choice for Liaison Counsel, Branstetter Stranch, is a respected firm with which Labaton Sucharow is already collaborating in Tennessee federal court on another securities fraud class action. These firms are eminently qualified to prosecute this case and have extensive experience in the prosecution of class actions and securities fraud claims such as those asserted in the Action.

## FACTUAL BACKGROUND

Pending before the Court are five complaints that were filed against: (1) Miller, an oil and natural gas exploration, production, and drilling company; (2) certain of Miller's officers;[3] and

---

[3] The following officers of Miller are named in the Action: (1) Scott M. Boruff, Miller's Chief Executive Officer ("CEO") and a director of the Company since August 2008 ("Boruff"); (2) Paul W. Boyd, Miller's Chief Financial Officer.

(3) the members of Miller's Board of Directors[4] (collectively, "Defendants"). The complaints allege violations of Sections 10(b) and 20(a) of the Exchange Act[5] and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 ("Rule 10b-5") promulgated thereunder.[6]

Miller, formerly known as Miller Petroleum, Inc., is an independent exploration and production company that utilizes seismic data and other technologies for geophysical exploration and development of oil and gas wells in the Appalachian region of eastern Tennessee and the Cook Inlet Basin in south-central Alaska.[7] On December 16, 2009, the Company announced that it had purchased some of the former Alaskan assets of Pacific Energy Resources through a Delaware bankruptcy proceeding (the "Alaskan Assets"). According to Miller, the discounted net present value of the Alaskan Assets was more than $325 million dollars, and Miller had paid a total of $2.25 million dollars for the Alaskan Assets, and an additional $2.22 million dollars for contract cure payments, bonds, and other local, federal, and State of Alaska requirements to operate the facilities.

The complaints allege that Miller materially misrepresented the value of the Alaskan Assets, thereby overstating its earnings and causing its stock to trade at artificially inflated prices.

---

[4] The following directors of Miller are named in the Action: (1) Deloy Miller, Chairman of the Board since December 1996, Chief Operating Officer since August 2008, and founder of the Company; (2) David J. Voyticky, a Company director since April 2010; (3) Herman Gettelfinger, a Company director since 1997; (4) Jonathan S. Gross, a Company director since April 2010; (5) David M. Hall, a Company director since December 2009 and CEO of Miller's Cook Inlet Energy subsidiary; (6) Merrill A. McPeak, a Company director since April 2010 and Lead Director since July 2011; (7) Charles Stivers, a Company director since 2004; and (8) Don A. Turkleson, a Company director since January 2011.

[5] *See* 15 U.S.C. §§ 78j(b) and 78t(a).

[6] *See* 17 C.F.R. § 240.10b-5.

[7] Miller is a Tennessee corporation headquartered in this District, in Huntsville, Tennessee. The Company's stock trades on the New York Stock Exchange (the "NYSE") under the ticker symbol "MILL."

On July 28, 2011, an internet blog called TheStreetSweeper published an article questioning the value of Miller's Alaskan Assets, citing a statement by the executive of a large competitor of Miller that had declined to purchase the Alaskan Assets, which it estimated were worth just $25 million to $30 million, offset by $40 million worth of liabilities. According to the Action, in reaction to this news, Miller's stock dropped $1.64 per share, or 23 percent, to close at $5.40 per share on July 28, 2011, and on the following day, Miller's stock fell an additional $0.99 per share, or 18 percent, to close at $4.41 per share.

Miller filed its Annual Report on Form 10-K for the fiscal year ended April 30, 2011 (the "2011 Form 10-K") on July 29, 2011 after the markets closed. Before the markets opened on August 1, 2011, Miller filed a Current Report on Form 8-K announcing that the financial statements contained in its 2011 Form 10-K and its accompanying auditor report should no longer be relied upon. The Company disclosed that it had filed the 2011 Form 10-K before its auditor had completed its review of Miller's financial statements and before the auditor had consented to the use of its report as part of the Form 10-K filing.

In addition, the Company stated that it expected to publish an amended Form 10-K that would include certain revisions. Miller revealed that its quarterly financial statements from the first, second, and third quarters of fiscal 2011 could no longer be relied upon due to accounting errors that would require a restatement. Specifically, Miller explained that it failed to properly classify royalty expenses, record sufficient expenses on equity awards, calculate the liability on derivative instruments, and failed to properly consolidate an entity it controlled. The Company further disclosed that the restatement resulted from a material weakness. On this news, Miller's stock dropped $0.46 per share, or 10 percent, to close at $3.95 per share on August 1, 2011.

4
Case 3:11-cv-00375 Document 11 Filed 10/11/11 Page 9 of 20 PageID #: 236

CEO Boruff published an open letter to Miller shareholders on August 1, 2011, explaining, among other things, that because the Company had filed its Form 10-K without a valid auditor report, its filing was not considered timely and was in violation of the NYSE's listing standards. The Action alleges that, on this news, Miller's stock price fell another $0.58 per share, or 14.6 percent, to close at $3.37 per share on August 2, 2011.

Before the market opened on August 9, 2011, Miller filed an amended Form 10-K and disclosed that for the fiscal quarters ended July 31, 2010 and October 31, 2010, it had "failed to properly record depletion, depreciation and amortization expense[s] related to leasehold costs, wells and equipment, fixed assets and asset retirement obligations and did not properly record the state tax credits expected from our Alaska operations." In addition, the Company revealed that for the fiscal quarter ended April 30, 2011, the Company had "inappropriately recorded revenue on a gross basis for overriding royalty interests." On these additional revelations, Miller shares declined $0.37 per share, or more than 13.5 percent, to close at $2.36 per share on August 9, 2011.

The Company's misconduct and the revelations thereof have caused Miller's stockholders to incur tens of millions of dollars in losses.

## ARGUMENT

### I. THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Five related securities class actions have been filed against the Defendants in this Court. The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," a court shall not appoint a lead plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii); *see also Garden City Employees' Ret. Sys. v. Psychiatric Solutions, Inc.*

5
Case 3:11-cv-00375   Document 11   Filed 10/11/11   Page 10 of 20   PageID #: 237

("*Psychiatric Solutions*"), No. 09-cv-882-WJH, 2010 WL 1790763, at *2 (M.D. Tenn. Apr. 30, 2010) (same). Under Rule 42(a), consolidation is appropriate when the actions involve common questions of law or fact and the Court has broad discretion under Rule 42(a) to consolidate cases. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).

Here, the related actions are ideally suited for consolidation pursuant to Rule 42(a) because their unification will expedite pretrial proceedings, reduce case duplication, and minimize the expenditure of time and money for all concerned parties. These actions present substantially similar factual and legal issues, arise from the same alleged scheme by Defendants, and allege violations of the Exchange Act. Because these actions are based on the same facts and involve the same subject matter, discovery obtained in this lawsuit will undoubtedly be relevant to all other actions. Accordingly, consolidation of the above-captioned actions is appropriate under Rule 42(a) and the PSLRA, and Local 103 respectfully submits that these actions should be consolidated.

## II. LOCAL 103 SHOULD BE APPOINTED LEAD PLAINTIFF

### A. The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA provides a straightforward procedure for selecting a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B) (setting forth procedure for selecting lead plaintiff). Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class–
>
> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and

> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i); *see also In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002).

Under the PSLRA, a court is to consider any motion made by class members and appoint the movant that the court determines to be most capable of adequately representing the interests of the class as lead plaintiff. Specifically, the PSLRA provides that a court:

> shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (. . . the "most adequate plaintiff") . . . .

15 U.S.C. § 78u-4(a)(3)(B)(i).

In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person or group of persons who: (1) filed a complaint or made a motion to serve as lead plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) who otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted by proof that the presumptive most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

## B. Local 103 Is the "Most Adequate Plaintiff"

Local 103 respectfully submits that it is the presumptive "most adequate plaintiff" because it has complied with PSLRA procedural requirements, holds the largest financial interest of any movant, and satisfies Rule 23's typicality and adequacy requirements.

### 1. Local 103 Has Satisfied the PSLRA's Procedural Requirements

Local 103 has filed this motion to serve as lead plaintiff in a timely manner. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the first plaintiff to file a complaint in the Action caused notice regarding the pending nature of this case to be published on *Business Wire*, a widely-circulated, national, business-oriented news wire service, on August 12, 2011. *See* Stranch Decl. Ex. C. Thus, as permitted by the PSLRA, any person who is a member of the proposed Class may apply to be appointed lead plaintiff within sixty (60) days after publication of the notice, *i.e.*, on or before October 11, 2011. Local 103 has filed its motion within the required period.

### 2. Local 103 Has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the movant with the largest financial interest in the relief sought by the class, so long as the movant meets the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Courts in the Sixth Circuit consider the following four factors in determining which movant has the largest financial interest in an action: (1) the number of shares purchased during the class period, (2) the number of net shares purchased during the class period, (3) the total net funds expended by the movant during the class period; and (4) the amount of loss suffered by the movant. *Burgraff v. Green Bankshares, Inc.* ("*Green Bankshares*"), No. 10-cv-253-CLC, 2011 WL 613281, at *2 (E.D. Tenn. Feb. 11, 2011).

Local 103 suffered substantial losses of approximately $73,654 calculated under the LIFO method of accounting for purchases and sales. Importantly, Local 103 did not sell any of its shares during the Class Period. As such, its losses are not affected by the removal of "in-and-out" losses associated with pre-disclosure stock sales. Local 103 is presently unaware of any other movant with a larger financial interest in the outcome of the Action. Consequently, and

because it also satisfies Rule 23's typicality and adequacy requirements, Local 103 is entitled to the legal presumption that it is the most adequate plaintiff.

### 3. Local 103 Satisfies Rule 23's Typicality and Adequacy Requirements

In addition to the requirement that the lead plaintiff have the largest financial interest, the PSLRA also directs that the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 . . . ." 15 U.S.C. § 78u-(4)(a)(3)(B)(iii)(I)(cc). With respect to class certification, Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) such claims are typical of those of the class; and (4) the representative will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). However, only the adequacy and typicality requirements of Rule 23 need to be met at the lead plaintiff stage. *Green Bankshares*, 2011 WL 613281, at *3; *see also In re Regions Morgan Keegan Closed-End Fund Litig.*, No. 07-cv-2830-EPW, 2010 WL 5173851, at *5 (W.D. Tenn. Dec. 15, 2010) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001)) (same).

#### (a) Local 103's Claims Are Typical of Those of the Class

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. Typicality is satisfied when the lead plaintiff has suffered the same or similar injuries as the absent class members, as a result of the same course of conduct by defendants, and its claims are based on the same legal issues. *See Green Bankshares*, 2011 WL 613281, at *3 ("A claim is typical under Rule 23 if it arises from the same event or practice or course that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.") (quotation omitted). The claims of the lead plaintiff need not be identical to the claims of the class to satisfy typicality. *See Craft v. Vanderbilt Univ.*, 174 F.R.D. 396, 404 (M.D. Tenn.

1996) (holding that typicality "may be satisfied even if there are factual distinctions between the named plaintiffs and those of other class members") (quotation omitted).

The typicality requirement is satisfied here because Local 103, which is not subject to any unique or special defenses, seeks the same relief and advance the same legal theories as other Class members. Like all members of the Class, Local 103: (1) purchased or acquired Miller securities during the Class Period; (2) at prices artificially inflated by Defendants' misrepresentations and omissions; and (3) suffered damages as a result. *See Ohio Pub. Employees Ret. Sys v. Fannie Mae* ("*Fannie Mae*"), 357 F. Supp. 2d 1027, 1034-35 (S.D. Ohio 2005) (discussing the typicality requirement). These shared claims, which are based on the same legal theory, and arise from the same events and course of conduct as the Class' claims, satisfy Rule 23(a)(3)'s typicality requirement.

### (b) Local 103 Will Fairly and Adequately Represent the Interests of the Class

The adequacy of representation requirement of Rule 23(a)(4) is satisfied when a representative party establishes that it "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The purpose of the adequacy requirement is to ensure there are no conflicts of interest between the purported lead plaintiff and the other class members. *Green Bankshares*, 2011 WL 613281, at *3 (citing *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 562 (6th Cir. 2007)). In the Sixth Circuit, adequacy is determined based on common interests between the lead plaintiff and the class and whether the representative "demonstrate[s] that it has both the ability and the incentive to represent the class's claims aggressively." *Regions Morgan Keegan*, 2010 WL 5173851, at *5. Representation is adequate when: (1) class counsel is qualified, experienced and generally able to conduct the litigation and (2) the class members do not have

interests that are antagonistic to one another. *See Fannie Mae*, 357 F. Supp. 2d at 1035 (setting forth ways movants can meet the adequacy requirement).

Local 103 will fairly and adequately represent the interests of the proposed Class. No antagonism exists between Local 103's interests and those of the absent Class members; rather, the interests of Local 103 and the Class members are squarely aligned. In addition, Local 103 has retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, and have timely submitted its choice to the Court for approval, in accordance with the PSLRA. *See* 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (B)(v). "That [the movant] has hired such accomplished counsel [as Labaton Sucharow] supports a finding that it has the intention of aggressively prosecuting the class's claims." *Regions Morgan Keegan*, 2010 WL 5173851, at *5. Local 103 suffered substantial losses due to Defendants' alleged fraud and, therefore, has a sufficient interest in the outcome of this case to ensure vigorous prosecution of the Action. Accordingly, Local 103 satisfies the adequacy requirement.

### III. LOCAL 103 IS PRECISELY THE TYPE OF LEAD PLAINTIFF ENVISIONED BY THE PSLRA

In addition to satisfying the requirements of Rule 23, Local 103—a large, sophisticated institutional investor—is the type of investor Congress sought to encourage to assume a more prominent role in securities litigation with the enactment of the PSLRA's lead plaintiff provisions. *See id.* at *6 ("One of the main purposes Congress sought to advance when enacting the PSLRA was to promote the appointment of institutional investors as lead plaintiffs."). Congress noted in the PSLRA Statement of Managers Report that the PSLRA was formulated "to increase the likelihood that institutional investors will serve as lead plaintiff[]." *Cendant*, 264 F.3d at 244 (quoting S. Rep. No. 104-98, at 10 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690).

Local 103, an electrical workers union in Eastern Massachusetts with a 100-year history, manages approximately $1 billion in assets. Local 103 is a sophisticated institutional investor with sufficient resources to adequately litigate the Action and supervise Class counsel. *See In re Am. Serv. Group, Inc.*, No. 06-cv-323-WJH, 2006 WL 2503648, at *3 (M.D. Tenn. Aug. 29, 2006) ("[Institutional investor movant's] assets reflect its financial ability to commit the resources to pursue the interests of the putative class in this litigation."). Local 103 understands the fiduciary duties of a lead plaintiff, is willing to oversee the vigorous prosecution of the Action, and has pledged to "provid[e] testimony at deposition and trial, if necessary." *See* Certification, Stranch Decl. Ex. A. Thus, as demonstrated herein, Local 103 is the very personification of the lead plaintiff contemplated by the PSLRA.

## IV.   THE COURT SHOULD APPROVE LOCAL 103'S CHOICE OF COUNSEL

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel for the class, subject to the court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). "[T]he court should generally employ a deferential standard in reviewing the lead plaintiff's choices." *Cendant*, 264 F.3d at 274. Local 103 selected Labaton Sucharow, highly-qualified counsel, to serve as Lead Counsel for the Class and Branstetter Stranch to serve as Liaison Counsel for the Class.

Labaton Sucharow, Local 103's selection for Lead Counsel, has excelled as lead counsel in numerous important actions on behalf of defrauded investors. Labaton Sucharow is lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-8141 (S.D.N.Y.), in which it recently achieved settlements-in-principle totaling approximately $1 billion. In addition, Labaton Sucharow is lead counsel in *In re Countrywide Financial Corp. Securities Litigation*, No. 07-cv-5295 (C.D. Cal.), which resulted in a settlement of $624 million—the largest securities fraud settlement arising from the financial crisis of 2007 to 2008. Labaton Sucharow also serves as lead counsel in *In re Broadcom Corp. Class Action*

*Litigation*, No. 06-cv-5036 (C.D. Cal.), the largest accounting restatement arising from options backdating in history. Labaton Sucharow achieved a cash settlement of $160.5 million for the class, at the time, the second-largest cash settlement in an options backdating case. Labaton Sucharow also served as co-lead counsel in *In re HealthSouth Corp. Securities Litigation*, No. 03-cv-1501 (N.D. Ala.), the largest securities fraud arising out of the healthcare industry, which resulted in a total settlement amount of $804.5 million for the class. Labaton Sucharow is currently serving as the court-appointed lead or co-lead counsel in the securities fraud cases against The Bear Stearns Cos., Inc., Federal National Mortgage Association (Fannie Mae), Satyam Computer Services Ltd., and Goldman Sachs Group, Inc., among other significant investor litigations. In *In re Monster Worldwide, Inc. Securities Litigation*, No. 07-cv-2237, Hr'g Tr. at 24:25-25:1 (S.D.N.Y. June 14, 2007), Judge Jed S. Rakoff appointed Labaton Sucharow as lead counsel, stating that "the Labaton firm is very well known to . . . courts for the excellence of its representation." *See also* Labaton Sucharow Firm Resume, Stranch Decl. Ex. D.

Branstetter Stranch, Local 103's Proposed Liaison Counsel, has been providing diverse legal services to its clients for more than fifty years, is experienced in complex commercial litigation, and regularly practices in this District. As set out in its firm resume attached as Exhibit E to the Stranch Declaration, Branstetter Stranch has litigated numerous cases in the federal courts of Tennessee, as well as nationwide, and serves as counsel for plaintiffs in class actions and complex litigation, including securities, derivative, and ERISA cases, such as *In re Nortel Network Corp. ERISA Litigation*, No. 03-md-1537-JTN (M.D. Tenn.), in which Branstetter Stranch serves as co-lead counsel. Branstetter Stranch is currently acting as liaison

counsel to Labaton Sucharow in *Regions Morgan Keegan*. Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation.

## CONCLUSION

For the foregoing reasons, Local 103 respectfully requests that the Court: (1) consolidate the above-captioned, related cases; (2) appoint Local 103 as Lead Plaintiff; and (3) approve Local 103's selection of Labaton Sucharow as Lead Counsel and Branstetter Stranch as Liaison Counsel.

Dated: October 11, 2011

Respectfully submitted,

 /s/ J. Gerard Stranch, IV

J. Gerard Stranch, IV, BPR# 023045
**BRANSTETTER, STRANCH &
 JENNINGS, PLLC**
227 Second Avenue North
Nashville, Tennessee  37201
Telephone: (615) 254-8801
Facsimile: (615) 250-3937
Email: gstranch@branstetterlaw.com

*Proposed Liaison Counsel for the Class*

Christopher J. Keller (NY-2891026)
Michael W. Stocker (NY-4448023)
Rachel A. Avan (NY-4455457)
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York  10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Emails: ckeller@labaton.com
mstocker@labaton.com
ravan@labaton.com

*Counsel for Electrical Workers
Pension Fund, Local 103, I.B.E.W.
and Proposed Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2011, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

- **Paul K. Bramlett**
  pknashlaw@aol.com

- **Stephen A. Marcum**
  smarcum@spmblaw.net

- **Lawrence P. Leibowitz**
  lpl@leibowitz-cohen.com

- **Douglas S. Johnston, Jr.**
  djohnston@barrettjohnston.com

- **George E. Barrett**
  gbarrett@barrettjohnston.com

- **Timothy L. Miles**
  tmiles@barrettjohnston.com

- **Robert I. Harwood**
  rharwood@whesq.com

Furthermore, I hereby certify that I have mailed the document via the U.S. Postal Service to the following non-CM/ECF participants:

**Jeffrey A. Berens**
Dyer & Berens LLP
303 East 17th Avenue, Suite 300
Denver, CO 80203

**Darren J. Robbins**
**David C. Walton**
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101

**Jeremy A. Lieberman**
Pomerantz Haudek Grossman & Gross LLP
100 Park Avenue
New York, NY 10017

**Michael I. Fistel, Jr.**
Holzer Holzer & Fistel, LLC
200 Ashford Center North, Suite 300
Atlanta, GA 30338

 /s/ J. Gerard Stranch, IV

J. Gerard Stranch, IV, BPR# 023045
**BRANSTETTER, STRANCH &
  JENNINGS, PLLC**
227 Second Avenue North
Nashville, Tennessee  37201
Telephone: (615) 254-8801
Facsimile: (615) 250-3937
Email: gstranch@branstetterlaw.com